**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

_____

MARLON HALL, *et al.*,                           :
                                                                  :
                      Plaintiffs,                        :
                                                                  : No. 1:14-CV-02355
v.                                                             :
                                                                  :
DIRECTV, LLC, *et al.*,                           :
                                                                  :
                      Defendants.                      :
_____ :


_____

JAY LEWIS, *et al.*,                               :
                                                                  :
                      Plaintiffs,                        :
                                                                  : No. 1:14-CV-03261
v.                                                             :
                                                                  :
DIRECTV, LLC, *et al.*,                           :
                                                                  :
                      Defendants.                      :
_____ :


**JOINT MOTION TO APPROVE FLSA SETTLEMENT**

Plaintiffs Marlon Hall, Alex Pierre, Kashi Walker, John Wood, Jay Lewis, Manuel

Garcia, and Kelton Shaw, by and through their undersigned counsel, move for an order

approving the settlement each of them has reached with Defendants DIRECTV, LLC

("DIRECTV") and DirectSat USA, LLC ("DirectSat") (collectively, "Defendants"). Consistent

with their settlement agreements with the Plaintiffs, Defendants do not oppose Plaintiffs' request for approval.[1]

## I.   PROCEDURAL HISTORY

This case is one of several cases filed across the country on behalf of technicians who installed and serviced DIRECTV systems. While this action has been proceeding in this Court since July 2014, Plaintiffs have been pursuing these claims against DIRECTV and certain of its contracting partners for many years, with some participating in the predecessor suits *Lang v. DIRECTV*, Case No. 10-1085-NJB (E.D. La.) and *Hall v. DIRECTV*, Case No. 13-08158 (C.D. Cal.) and other participating in *Acfalle v. DIRECTV, Inc.*, Case No. 13-8108 (C.D. Cal.) and *Arnold v. DIRECTV*, No. 10-0352-JAR (E.D. Mo.).

### A.   *Lang v. DIRECTV*

Plaintiffs Marlon Hall, John Wood, Alix Pierre, Kashi Walker, Jay Lewis and Kelton Shaw previously opted in to a conditionally certified FLSA action pending in the Eastern District of Louisiana styled *Lang v. DIRECTV*, Case No. 10-1085-NJB (E.D. La.).  After the *Lang* Plaintiffs defeated a motion to dismiss and to strike the class allegations (*Lang* Dkt. 42), the *Lang* court granted Plaintiffs' motion for conditional class certification (*Lang* Dkt. 245).

The parties in the *Lang* matter engaged in some limited class discovery which revealed that Plaintiffs' damages would be difficult to calculate on common proof at trial. As a result, the parties filed a Joint Motion to Decertify the *Lang* action, which the *Lang*

---

[1] Defendants do not oppose this motion for purposes of settlement approval only. However, Plaintiffs acknowledge that Defendants do not affirmatively endorse the arguments made herein and reserve all rights to oppose any legal or factual position taken by Plaintiffs in this motion at a later time should the Court not approve the settlement and/or in other actions.

court granted on September 3, 2013, dismissing all of the *Lang* opt-in Plaintiffs without prejudice, and tolling the statute of limitations for 60 days to permit the *Lang* opt-in Plaintiffs to refile their individual claims. (*Lang* Dkt. 467.)

**B.**     ***Hall v. DIRECTV* – Central District of California**

On November 1, 2013, Marlon Hall, John Wood, Alix Pierre, and Kashi Walker filed their individual claims against Defendants in *Hall v. DIRECTV*, Case. No. 13-08158 (C.D. Cal.) (Dkt. 1), an action filed by former *Lang* Plaintiffs and others in the Central District of California. (*See Hall* Dkt. 1.)

On July 22, 2014, the *Hall* court entered an order transferring the claims of non-California Plaintiffs with FLSA-only claims (including Marlon Hall, John Wood, Alix Pierre, and Kashi Walker), closer to their home states or where they performed their work. (*See Hall* Dkt. 59.)

**C.**     ***Acfalle v. DIRECTV* – Central District of California**

On November 1, 2013, Jay Lewis and Kelton Shaw filed their individual claims against Defendants in *Acfalle v. DIRECTV, Inc.*, Case No. 13-8108 (C.D. Cal.) (Dkt. 1) (*Acfalle* Dkt. 9),an action filed by former *Lang* Plaintiffs and others in the Central District of California. (*See Acfalle* Dkt. 1.)

On July 22, 2014, the *Acfalle* court entered an order "dropping" 277 non-California Plaintiffs with FLSA-only claims (including Jay Lewis and Kelton Shaw), dismissing them *without prejudice* to refile their claims closer to their home states or where they performed their work, and tolling the running of their statute of limitations for 90 days. (*See Acfalle* Dkt. 71.)

D.      *Arnold v. DIRECTV*

Manuel Garcia previously filed a consent to become a party plaintiff in *Arnold v. DIRECTV*, No. 10-0352-JAR (E.D. Mo.), a conditionally-certified collective action, pending in the Eastern District of Missouri. Unlike *Lang,* which involved only those technicians that were classified as independent contractors, *Arnold* concerned technicians who were acknowledged W-2 employees of DIRECTV, and DIRECTV's contracting partners such as DirectSat, in addition to technicians who were classified as independent contractors.

The *Arnold* matter was heavily litigated. Virtually every issue that could have been disputed was subject to motion practice in that case. The parties briefed two motions to dismiss–one for failure to state a claim (*Arnold* Dkt. 19), and one to dismiss or stay under the first-filed rule in light of the *Lang* action (*Arnold* Dkt. 35). In September 2012, the *Arnold* Plaintiffs moved for conditional collective action certification pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). DIRECTV vigorously opposed certification of the putative collective action, and on September 28, 2012, the *Arnold* Court granted conditional certification of a nationwide collective action consisting of service technicians who installed and serviced DIRECTV satellite television systems. (*Arnold* Dkt. 121 at 17.) Following briefing on the form of notice to be issued to the court (*see Arnold* Dkt. 122 & 123) and after notice was sent, approximately three thousand plaintiffs opted into the *Arnold* matter.  Subsequently, the parties agreed to decertify the "contractor" technicians and the *Arnold* court ordered that such plaintiffs could pursue individual claims and ordered their statute of limitations continue to be tolled for 90 days. (*Arnold* Dkt. 221, 244.)

E.      **Plaintiffs' Motion to Consolidate Before the Judicial Panel on Multidistrict Litigation**

By October 2014, around the time that this action was filed, Plaintiffs' counsel had filed at least 10 other related actions, with more than 30 additional actions to be filed, across the country against DIRECTV asserting claims similar to the ones alleged here. To conserve the resources of all parties and the courts, Plaintiffs moved to consolidate and transfer the actions pursuant to 28 U.S.C. § 1407 before the Judicial Panel on Multidistrict Litigation ("JPML").  (*See In re DIRECTV Wage & Hour Litigation*, MDL No. 2594.)  DIRECTV opposed the motion and, on February 6, 2015, the JPML denied transfer.  (MDL Dkt. 51.)

### F.    Proceedings Before this Court

After the JPML denied transfer, the parties continued to heavily litigate this case and the related actions. Plaintiffs filed an Amended Complaint on March 20, 2015. (Dkt. 90.) Defendants moved to dismiss, which this Court granted on June 30, 2015. (Dkt. 96–97.) Thereafter, Plaintiff's appealed the Court's Judgment and Order dismissing the case. (Dkt. 98.) On January 25, 2017, the United States Court of Appeals for the Fourth Circuit reversed the Court's Judgment and Order dismissing this case. (Dkt. 102.)

On March 6, 2017, the Fourth Circuit denied the Defendant's Motion for Rehearing En Banc. (Dkt. 105.) On June 5, 2017, Defendants filed a Petition for Writ of Certiorari in the United States Supreme Court. (USSC Dkt.). Following the filing of four (4) amicus curiae briefs in support of the Court granting certiorari, the Court requested a response from Plaintiffs to Defendants' petition on September 20, 2017. (USSC Dkt.). On November 20, 2017, Plaintiffs filed their brief in opposition to Defendants' Petition for Writ of Certiorari. (USSC Dkt.). On January 8, 2018, the Supreme Court denied Defendants' Petition. (USSC Dkt.).

Despite this case's unique appellate history, the parties and counsel in the related cases then pending in other federal district courts across the country conducted extensive discovery, including over 3.4 million documents exchanged and over 666 total depositions conducted. Hanson Dec. ¶ 5.

Further, comprehensive summary judgment motions were briefed in 12 other cases pending elsewhere comprising over 100 separate motions. *Id*. The orders issued on those motions were mixed. Defendants were successful on three motions, the plaintiffs survived summary judgment in five cases, and dispositive motions were pending in six cases when stays were put in place to allow the parties to explore a global settlement. *Id*. And courts issued divergent orders on nearly every discreet legal issue.

In October 2017, the first jury trial of a related case was held in the United States District Court for the District of Arizona. That trial resulted in a defense verdict for DIRECTV, the only defendant in that case. Conversely, several weeks after the Arizona trial, the Central District of California issued an order granting Plaintiffs' motion for summary judgment on similar issues that had been decided in DIRECTV's favor in that Arizona trial. *See Le v. DIRECTV*, Case No. 2:16-cv-01369 (C.D. Cal.). With those opposing results in hand, the parties conducted a mediation with the intent to settle all related cases nationwide. This case was stayed to allow the parties to implement the global settlement framework reached by the parties at the aforementioned mediation, as will be detailed *infra*. (Dkt. 118-119) After several weeks of vigorous negotiations, the parties agreed to a settlement framework which contemplated the resolution of this case under similar terms as the other related cases, after the U.S. Supreme Court's consideration of the aforementioned Writ of Certiorari.

## II.      THE PARTIES' SETTLEMENT

The settlements before the Court were the result of an intensive, weeks-long, arms-length negotiation. Michael Dickstein, a well-respected mediator with deep experience mediating a wide range of wage and hour litigation matters, conducted an in-person mediation with representatives for all the parties on November 30, 2017, in Dallas, Texas. Hanson Dec. ¶ 6.  Although substantial progress was made on November 30, the parties were unable to reach final agreement at the mediation. Over the course of subsequent weeks, and with the assistance of Mr. Dickstein, the parties continued negotiations and ultimately reached an agreement on a framework for settling this and the other related cases on January 3, 2018. Hanson Dec. ¶ 7. The parties initially excluded this case from the global settlement discussions as it was pending before the United States Supreme Court on a petition for writ of certiorari.  Hanson Dec. ¶ 21. On January 8, 2018, the Supreme Court issued its order declining to grant the writ and the parties shortly thereafter agreed to settle this case on the same terms as the other related cases in the global settlement, albeit with a slightly reduced attorney's fees figure. (*Id.*)

Unlike a class or collective action settlement where a class representative sponsors a settlement on behalf of the class, here, each of the Plaintiffs has specifically agreed to his own individual settlement agreement with Defendants to resolve the claims that he asserts in this case. Hanson Dec. ¶ 8.  Those individual settlement agreements are attached as Exhibit 1 to the Declaration of George Hanson submitted in support of this motion. The settlement agreements do not effect general releases of all claims Plaintiffs may have against Defendants (for example, the releases contained in the settlement agreements do not extend to claims for workplace discrimination), but are limited to the release of

disputes relating to any wage and hour issues, including any such claims that were brought or could have been brought in this case. Hanson Dec. Ex. 1. In exchange for the release and dismissal of the case, each Plaintiff will receive between $3,500 and $13,950, based on the length of time that he installed and serviced DIRECTV satellite television systems. Hanson Dec. ¶ 10. The settlement agreements also provide that Plaintiffs' counsel will receive the discounted sum of $24,500 per Plaintiff in attorney's fees and costs. Hanson Dec. ¶ 13.

## III.   THE SETTLEMENT SHOULD BE APPROVED

FLSA claims can be settled only under the supervision of the Secretary of Labor or approved by a district court. 29 U.S.C. § 216(b), (c); *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982); *Garcia v. Decalo Med. Group, LLC*, 2015 U.S. Dist. LEXIS 17128, *4–5 (D. Md. Dec. 23, 2015) ("The Fourth Circuit has not directly addressed the factors to be considered in deciding a motion for approval of an FLSA settlement, however district courts in this circuit tend to apply the standard set by *Lynn's Food Stores*[.]"). To approve an FLSA settlement, the court must find that the settlement represents a fair and reasonable resolution of a *bona fide* dispute under the FLSA. *Garcia*, 2015 U.S. Dist. LEXIS 17128 at *4–5. If the proposed settlement reflects a reasonable compromise over contested issues, the Court may approve the settlement to promote the policy of encouraging settlement of litigation. *Id.* But first, the court must determine whether the proposed settlement is both fair and reasonable, and this includes an evaluation of the reasonableness of the attorneys' fees sought. *Id.* at *4. Based on the contested nature of this litigation and the quality of the settlement, Plaintiffs respectfully submit that this Court should approve the parties' settlement agreements because they are a fair and reasonable resolution of a *bona fide* dispute.

### A.      The Liability Portion of the Settlement Should Be Approved

There can be no doubt that the claims at issue in this case constitute a *bona fide* dispute. For many years, Plaintiffs have sought redress for what they allege to be Defendants' failure to pay them as required by the FLSA and the United States Department of Labor's interpreting regulations. In their defense, Defendants have consistently and aggressively maintained that they have no liability whatsoever to Plaintiffs under the FLSA or any other legal theory.   Courts have long recognized that such disputes in litigation regarding liability under the FLSA constitute a "*bona fide* dispute." *See Lynn's Food Stores, Inc.*, 679 F.2d at 1352-54.  Indeed, the parties have agreed to settle this dispute only after extensive discovery and motion practice conducted in several different, related cases over several years.

In addition, the parties' settlements clearly constitute a "fair and reasonable resolution" of this *bona fide* dispute. The global settlement was the result of arms-length negotiation facilitated by one of the country's most respected wage and hour litigation mediators, Michael Dickstein. All of the parties were represented by experienced and competent counsel who have handled numerous other wage and hour matters on class, collective, and individual bases. Hanson Dec. ¶ 6.  The parties spent considerable time and energy analyzing the merits of the case and were intimately familiar with the strengths and weaknesses of the parties' litigation positions.

Further, each of the Plaintiffs here has agreed to his own individual settlement. Plaintiffs will receive meaningful compensation—a minimum of $3,500 per person, and up to $13,950—calculated based on the number of weeks each Plaintiff worked overtime during the FLSA's two-year statute of limitations period.  Specifically, each Plaintiff will

receive $150 for every week he worked overtime during the two-year FLSA statute of limitations. Hanson Dec. ¶ 10.  The number of overtime weeks for each Plaintiff is based on the Plaintiff's own estimate of weeks in which he worked overtime during the relevant statute of limitations period. Hanson Dec. ¶ 11.[2]

This amount fairly compensates Plaintiffs for the value of their claims for several reasons.  As an initial matter, the claims at issue in this case included the time period when these Plaintiffs were classified as "independent contractors." Thus, for these Plaintiffs to recover anything, they had to prove that one or both of the Defendants "employed" them for the purposes of the FLSA. There was substantial risk on these issues, as evidenced by the fact that Defendants prevailed on the question of employment on summary judgment motions in several related cases. Hanson Dec. ¶ 12. DIRECTV also prevailed on the question of employment after a two-week federal jury trial in the District of Arizona last year resulted in a defense verdict for DIRECTV (the only defendant in that case) on this issue. Hanson Dec. ¶ 12. Here, if these Plaintiffs were unable to establish that Defendants were their employers, their claims would have failed entirely.

All Plaintiffs were also vulnerable to Defendants' argument that, even if Plaintiffs were employed by one or both Defendants, Plaintiffs were exempt as commissioned employees of retail establishments. *See, e.g.*, *Carpenter v. DIRECTV, LLC,* No. 14-CV-02854-MJW, 2017 WL 4225797, *7 (D. Colo. May 16, 2017).

Moreover, as noted above, several courts in the related cases have granted Defendants' motions for summary judgment on the issue of willfulness, holding that

---

[2] Defendants do not agree with Plaintiffs' calculations, but do not dispute them for purposes of this motion.

Defendants did not willfully violate the FLSA, which limited plaintiffs' recovery to a two-year look back period.[3]   Assuming the question of willfulness would have survived summary judgment here, it is possible a jury in this case would have concluded the same, which would have made recovery of any third-year time in this case an unlikely proposition.

In addition, and dramatically impacting the scope of recoverable damages, there was always the possibility that a jury would reject Plaintiffs' primary claims and find that Plaintiffs understood that their "piece-rate" compensation structure paid Plaintiffs for all working time. Had a jury made such a determination, and found for Plaintiffs on all other issues, the most Plaintiffs could have recovered was an overtime premium of just 0.5 times their regular rate of pay for the few hours of overtime they worked during the weeks in which they worked overtime and did not receive such pay. In that vein, several courts have followed the Second Circuit's reasoning in *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 116 (2d Cir. 2013) and held that plaintiffs are legally foreclosed from recovering damages for so-called overtime "gap" time. That is, plaintiffs cannot recover wages, pursuant to a claim for unpaid overtime, for unpaid work they performed during the first 40 hours worked in overtime weeks. Indeed, DIRECTV prevailed on this issue in a motion *in limine* during the jury trial in the District of Arizona and in a pre-trial ruling on a motion *in limine* in the Northern District of Iowa. Had Defendants prevailed on that issue here, it would have been another independent basis to significantly reduce the recovery available to Plaintiffs.

---

[3] *See Schmidt v. DIRECTV, LLC*, No. 14-cv-03000 (D. Minn.), Dkt. 314 at p. 15; *Le v. DIRECTV, LLC,* No. 2:16-cv-01369 (C.D. Cal.), Dkt. 159 at pp. 37-38; *Andersen v. DIRECTV, LLC*, No. 2:14-cv-02307 (D. Ariz.), Dkt. 146 at pp. 14-15.

Against this backdrop, a comparison of the amounts Plaintiffs are set to receive in the settlements with their realistic "best day" after a successful trial demonstrates that the compromises are reasonable and provide Plaintiffs fair consideration for the release set forth in the Parties' settlement agreements. The $150 per overtime week provided by this settlement equates to 10 hours of additional pay per week at the rate of $15.00 per hour. Hanson Dec. ¶ 11.  Given that Plaintiffs most commonly worked five days per week, the settlement provides two additional hours of pay for each day worked in an overtime week. *Id*.  If the settlement is viewed through the lens of Defendants' argument that only the 0.5 overtime premium was recoverable, the settlement actually provides four hours of additional pay per day. *Id*.  Though their time estimates varied somewhat, Plaintiffs generally testified that they worked between 9 and 10 hours per day and that 2 to 4 of those hours were unpaid. *Id*. Because the settlement effectively provides back pay for between 2 and 4 hours (depending on which side's proffered calculation is used) per day, Plaintiffs' counsel believes the settlement provides the Plaintiffs with close to "make whole" relief. *Id*.  While it is true that a jury could award them more after a successful trial—for instance, liquidated damages or an additional year of limitations period upon proving willfulness—it is also true  that a jury could award them less, or nothing at all. In light of all the risks of ongoing litigation, this settlement represents a reasonable resolution of this case and should be approved.[4]

---

[4] As noted above, this case is one of several related cases pending in federal courts around the country. All other courts have issued orders approving settlements on the same basic terms presented here as fair and reasonable. *See Hebron, et al. v. DIRECTV, LLC, et al.*, Case No. 1:14-CV-08155 (N.D. Ill.) (Doc. 238); *Anaya, et al. v. DIRECTV, LLC, et al.*, Case No. 1:14-CV-05703 (N.D. Ill.) (Doc. 238); *Banks, et al. v. DIRECTV, LLC, et al.*, Case No. 1:14-cv-00398 (Doc. 108); *Renteria-Camacho v. DIRECTV, Inc. et al.*, Case No. 2:14-cv-02529 (Doc. 116);

### B.       The Attorney's Fees Provision of the Settlement Should Be Approved

The FLSA provides that a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (2008). Unlike most fee-shifting statutes, the attorneys' fee award under the FLSA is mandatory. *Compare* 29 U.S.C. § 216(b) (a court "shall" award fees) *with* 42 U.S.C. § 1988(b) (a court "may" award fees "in its discretion"). The "case law construing what is a 'reasonable' fee applies uniformly" to all federal fee-shifting statutes. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). To encourage employees to enforce their FLSA rights in court, and thus to further the public policies underlying the FLSA, *see Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 709 (1945), Congress has permitted individual employees to sue for back wages and liquidated damages and to

---

*Tapia, et al. v. DIRECTV, LLC, et al.*, Case No. 2:14-cv-0939 (Doc. 125); *Schmidt et al. v. DIRECTV, LLC, et al.*, Case No. 0:14-cv-030000 (D. Minn.) (Doc. 345); *Alston, et al. v. DIRECTV, LLC, et al.*, Case No. 3:14-cv-04093 (D.S.C.) (Doc. 198); *Rapczynski et al. v. DIRECTV, LLC, et al.*, Case No. 3:14-cv-02441 (M.D. Penn.) (Doc. 136); *Cringan et al. v. DIRECTV, LLC, et al.*, Case No. 5:14-cv-06113 (W.D. Mo.) (Doc. 151); *Mabry, et al. v. DIRECTV, et al.*, Case No. 3:14-cv-698 (W.D. Ky.) (Doc. 97); *Andersen, et al. v. DIRECTV, LLC, et al.*, Case No. CV-14-02307 (D. Ariz.) (Doc. 237); *Grettler, et al. v. DIRECTV, LLC, et al.*, Case No. 3:14-cv-01052 (D. Conn.) (Doc. 218); *Aulik, et al. v. DIRECTV, LLC, et al.*, Case No. 3:14-cv-01804 (D. Conn.) (Doc. 181); *Berger v. DIRECTV, LLC, et al.*, Case No. 3:14-cv-01661 (D. Ore.) (Doc. 71); *Chesley, et al. v. DIRECTV, LLC, et al.*, Case No. 1:14-cv-00468 (D.N.H.) (Doc. 76); *Comer, et al. v. DIRECTV, LLC, et al.*, Case No. 2:14-cv-01986 (S.D. Ohio) (Doc. 165); *Delgado, et al. v. DIRECTV, LLC, et al.*, Case No. 1:14-cv-01722 (S.D. Ind.) (Doc. 204); *Demarco, et al. v. DIRECTV, LLC, et al.*, Case No. 3:14-cv-04623 (D.N.J.) (Doc. 202); *Al Azawi, et al. v. DIRECTV, LLC, et al.*, Case No. 4:14-CV-02962 (S.D. Tex.) (Doc. 134); *McCaffrey, et al., v. DIRECTV, LLC, et al.*, Case No. 2:14-CV-00877 (E.D. Wis.) (Doc. 169); *Amponsah, et al. v. DIRECTV, LLC, et al.*, Case No. 1:14-cv-03314 (N.D. Ga.) (Doc. 204); *Bryan, et al. v. DIRECTV, LLC, et al.*, Case No. 5:14-cv-3063 (W.D. La) (Doc. 78); *Buttita, et al. v. DIRECTV, LLC, et al.*, Case No. 3:14-cv-00566 (N.D. Fla.) (Doc. 216); *Addison. v. DIRECTV, LLC*, Case No. 2:13-cv-08109 (C.D. Ca.) (Doc. 113); *Doucette, et al. v. DIRECTV, LLC, et al.*, Case No. 2:14-cv-02800 (W.D. Tenn.) (Doc. 112); *Belmont, et al. v. DIRECTV, LLC, et al.*, Case No. 1:14-cv-00889 (M.D.N.C.) (Doc. 100); *Mullings, et al. v. DIRECTV, LLC, et al.*, Case No. 14-cv-05743 (S.D.N.Y.) (Doc. 199); and *Dowd, et al. v. DIRECTV, LLC, et al.*, Case No. 2:14-cv-14018 (E.D. Mich.) (Doc. 147).

receive reasonable attorney's fees and costs. *See* 29 U.S.C. § 216(b). Thus, a prevailing plaintiff in a FLSA case is entitled to a reasonable award of attorneys' fees and costs. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 n.16 (1981).  Thus, a prevailing plaintiff in an FLSA case is entitled to a reasonable award of attorneys' fees and costs. 29 U.S.C. § 216(b). Congress' purpose in adopting fee-shifting provisions was to strengthen the enforcement of selected federal laws by ensuring that private persons seeking to enforce those laws could retain competent counsel by ensuring that if they prevail, counsel will receive fees commensurable with what they could obtain in other litigation. *See* S. Rep. No. 94-1011, p. 6 (1976), U.S. Code Cong. & Admin. News 1976, p. 5908; *see also Soler v. G & U, Inc.*, 658 F. Supp. 1093, 1097 (S.D.N.Y. 1987) ("[i]t strongly appears that Congress intended to encourage private citizen enforcement of the FLSA."). Civil enforcement of wage and hour laws is an important supplement to the work of government regulators in carrying out the public policy of the FLSA. *Andersen v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-687 (1946) (noting the FLSA is a "remedial" statute that embodies "great public policy").

Courts typically use the "lodestar" method to determine a reasonable amount of attorney's fees under the FLSA. *Moore v. Freeman*, 355 F.3d 558, 565 (6th Cir. 2004). The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. *Id.* There is a strong presumption that the lodestar amount is reasonable. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552-554 (2010).

The settlement agreements with each of the Plaintiffs provides that Plaintiffs' counsel will receive a flat amount of $24,500 for each Plaintiff, separate from the amounts

Defendants have agreed to pay the Plaintiffs to settle the liability portion of their claims. Hanson Dec. ¶ 13.  This agreement is reasonable not only because each Plaintiff has individually agreed to that allocation, but also because this amount constitutes well greater than a 50% discount on the lodestar calculated by Plaintiffs' counsel incurred pursuing Plaintiffs' claims. Hanson Dec. ¶ 15–16.  As noted above, the Plaintiffs in this case participated in *Lang*, *Acfalle*, and *Arnold*, actions that had been ongoing for more than seven years.  Plaintiffs' counsel maintained detailed time records throughout the litigation.  Those records reflect an investment of over $25 million in lodestar in the individual post-*Lang* actions, including this one, at a blended hourly rate of approximately $405 per hour.  In addition, Plaintiffs' counsel has incurred over $1.5 million in costs pursuing the claims in these cases.[5]  Hanson Dec. ¶ 15.  Dividing the total lodestar amount calculated by Plaintiffs' counsel, as well as the total costs amount, by the 342 Plaintiffs in the related actions included in the parties' global settlement results in an average amount of $72,423 in lodestar and $4,574 in costs attributable to each Plaintiff.  Plaintiffs' counsel will receive $24,500 to account for both fees **and** costs per Plaintiff, which reflects a substantial discount—more than 50%—off the actual investment of time and out-of-pocket costs that Plaintiffs' counsel incurred in achieving this result.  Hanson Dec. ¶ 16.  By any measure, this is a reasonable fee award.  *See Goodwin v. Citywide Home Loans, Inc.*, No. SACV14866JLSJCGX, 2015 WL 12868143, at *4 (C.D. Cal. Nov. 2, 2015) ("The requested fee

---

[5] Plaintiffs acknowledge, as indicated above, *see* fn. 1, *supra*, that Defendants' non-opposition to this motion does not amount to an endorsement of Plaintiffs' positions herein.  To the contrary, Plaintiffs understand that Defendants reserve their rights to oppose those positions, including Plaintiffs' positions on the merits and their attorney's fee lodestar calculation should the Court not approve the parties' settlement and/or in other actions.

award amounts to approximately 60% of these incurred fees, and a negative multiplier in this context suggests that the requested fee award is reasonable."). Strong policy considerations encourage litigants to settle on the amounts of attorney's fees and costs to be paid at the conclusion of litigation involving fee-shifting statutes. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."). Given the reasonableness of the discounted lodestar and costs to be received by Plaintiffs' counsel, there is no reason to disturb the parties' agreements, and the fee and costs portion of the settlement should readily be approved. *See Guice v. DIRECTV*, 2018 U.S. Dist. LEXIS 88585, *9-10 (May 24, 2018).

      1. **In individual FLSA cases—as opposed to a class or collective action— the Court's review of the attorneys's fees is focused on confirming there was no potential collusion between Defendants and Plaintiffs' counsel.**

As the Court knows, in a collective action settlement—as with a Rule 23 class action settlement—it is obligated to conduct a review of all the settlement terms, including the attorneys' fees and expense reimbursement provisions, even when the parties have agreed on those terms. *See* FRCP 23(e). The reason for that rule is apparent: in a class or collective settlement, the claims of class members are being compromised by one or more representative plaintiffs. Of course, a class or collective settlement is distinct from what is before the Court here—the settlement of exclusively individual statutory claims in which each Plaintiff is independently represented and personally agreed to the settlement terms. Hanson Dec. ¶ 8. As a district court in this Circuit explained when considering the attorneys' fee provisions in an FLSA settlement and performing a more simplified lodestar cross check rather than the detailed twelve-factor review:

> Assessing the fairness of attorney's fees under an FLSA settlement negotiated at arm's length is not identical to determining their reasonableness using the familiar lodestar method. … This number was negotiated and agreed to, and disclosed to all potential claimants, none of whom objected. In addition, all of the claimants signed individual releases after reviewing the settlement terms. Finally, each Plaintiff had entered into a written fee agreement with counsel specifying fees within the rates fixed by the parties' agreement.

*Devine v. City of Hampton*, 2015 WL 10793424, at *3 (E.D. Va. Dec. 1, 2015). As in *Devine*, the attorney's fee allocation for each plaintiff both in this case and the global settlement was disclosed to each plaintiff. Hanson Dec. ¶ 13. But unlike the collective settlement in *Devine*, here, each plaintiff signed an individual settlement agreement that recited the fee just as each plaintiff had previously signed individual retainer agreements. Hanson Dec. ¶ 13.

Nonetheless, a review of the attorneys' fees and expense reimbursement provisions of the settlement is appropriate to confirm that those payments are the product of arm's-length negotiation, and not indicative of potential collusion between Defendants and Plaintiffs' counsel. Suffice to say that the undersigned counsel can fully assure the Court that the settlement of this case was no product of collusion—rather it was the result of many years of hard-fought litigation and subsequent arm's-length negotiations—and that the $24,500 in fees and expenses that the parties ultimately agreed to is a fair and reasonable resolution of a *bona fide* dispute. Hanson Dec. ¶ 17 .

### 2. Plaintiffs in this case benefitted from the lodestar expended in the related cases and it is properly considered in evaluating the settled fee.

As noted above, the settlement of plaintiffs' claims in this action was part of a larger global settlement that resolved the claims of 342 plaintiffs pending in a total of 32 related federal court actions across the country. At the outset of negotiations, Plaintiffs' counsel

was guided by the principle that the claims of similarly-situated plaintiffs should be treated the same way for settlement purposes. This concept of consistency across similarly-situated plaintiffs was not only the fairest and most practical approach to a global settlement, but was also consistent with the ethical requirements governing counsel when representing multiple parties in litigation. Hanson Dec. ¶¶ 18-21. The primary variable driving the individual settlement amounts was the number of weeks each plaintiff worked during the applicable limitations period and end result of the global settlement was that similarly postured plaintiffs were allocated the same dollar amount per week.[6] Consistent with this approach, attorneys' fees and costs were allocated among similarly situated plaintiffs in the related cases.[7]

The plaintiffs in this case directly and substantially benefitted from the work performed in the related cases. Hanson Dec. ¶ 22. Although this case was originally transferred to this Court on July 22, 2014, the case was effectively in a stay from July 1, 2015 to January 8, 2018, while the parties litigated an appeal to the Fourth Circuit which resulted in the reversal of the district court's Order dismissing Plaintiffs' Complaint.

---

[6] The amount per week allocated for each plaintiff in a related case depended on the status of their claims relative to summary judgment. Plaintiffs who had litigated and survived summary judgment by court order were allocated $200/week; plaintiffs whose claims had not received a ruling on summary judgment were allocated $150/week; and plaintiffs who had judgment entered against them (but were on appeal) were allocated $50/week. Hanson Dec. ¶ 21.

[7] Plaintiffs in the related cases who had judgment entered against them and were on appeal were allocated $13,000 *per capita* for attorneys' fees and costs, and all other plaintiffs were allocated $26,000 *per capita* for attorneys' fees and costs. Hanson Dec. ¶ 22. As noted above, this case was uniquely procedurally postured and the parties arrived at $24,500 per capita for attorneys' fees and costs as part of the settlement of this case. Hanson Dec. ¶ 21. The reason for the $1,500 distinction was that the $26,000 figure included approximately $1,500 in costs that were fully recouped through the global settlement and, thus, should not be assessed against Defendants in the instant settlement, which shortly followed.

Hanson Dec. ¶ 23. *See Hall, et al. v. DIRECTV, LLC, et al.*, App. Case No. 15-1857 (L), Doc. No. 60-1 (4th Cir. January 25, 2017). The case remained in a stay while the parties litigated a Petition for Writ of Certiorari before the United States Supreme Court.

By the time this case was back on the active docket, as a result of the immense amount of work in the related cases (that eventually included hundreds of depositions, exchange of millions documents, more than many separate motions for summary judgment, and a jury trial in Phoenix, Arizona), all parties had been provided with sufficient information to contemplate a settlement on fair and reasonable terms. Hanson Dec. ¶ 24. It is undeniable that settlement of this case would not have been reached but for the hours committed and results obtained (both favorable and unfavorable) in the earlier related cases. For this reason, and as part of the global settlement, it was appropriate to apportion attorneys' fees and costs across all plaintiffs. Hanson Dec. ¶ 25.

There is also relevant authority supporting that lodestar and costs incurred in related cases that favorably impacted and advanced this litigation should be considered when evaluating the reasonableness of the fees and costs as agreed by the parties. In analyzing whether time spent on prior litigation may be recoverable or considered in assessing the reasonableness of an award of attorneys' fees in later litigation, the Supreme Court has held that the pivotal question is whether the work "was both useful and of a type ordinarily necessary to advance the [] litigation to the stage it reached before settlement." *Webb v. Bd. of Educ. of Dyer Cty., Tenn.*, 471 U.S. 234, 243 (1985).

Although Plaintiffs' counsel has not been able to identify any Fourth Circuit case law on this point, decisions from the Third and Sixth Circuits have expanded upon the Supreme Court's *Webb* decision. For example, in *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567,

573–74 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), the district court initially certified an FLSA collective and eight opt-ins joined the case. After discovery, the court granted decertification and dismissed the opt-ins' claims without prejudice. Thereafter, the opt-in plaintiffs filed individual claims that were consolidated in *Dellarussiani,* and which were thereafter resolved by offers of judgment. When plaintiffs' counsel moved for fees, they requested fees for work expended in the predecessor *O'Brien* case. The district court, however, only granted attorneys' fees for time spent in the *Dellarussiani* case*,* reasoning that, because the plaintiffs had not prevailed in *O'Brien,* they were not entitled to fees for work expended in that case. *Id.* at 574, 576.

On appeal, the Sixth Circuit held that the district court abused its discretion in denying the opt-in plaintiffs' attorneys' fees from the original *O'Brien* case merely because they did not prevail in that case. *Id.* at 576 ("[T]he [FLSA] statute does not bar the district court from awarding attorney fees incurred in the [original] *O'Brien* suit for the [later filed individual opt-in suits]"). In determining whether to award fees from a decertified collective action, the Sixth Circuit focused on whether the work performed in the original suit benefitted the plaintiffs in their subsequent individual suits. *Id.* Thus fees for depositions in the original suit that "uncovered facts surrounding the [opt-in] plaintiffs' claims . . . should not be rejected," even if the depositions were conducted as part of the original named plaintiffs' efforts to obtain collective certification. *Id.* Other "discovery concerning the [opt-in] plaintiffs' claims" that took place in the original action should likewise be compensable. *Id.*

Similarly, the Third Circuit has held that attorneys' fees incurred in prior, related litigation are recoverable in a subsequent litigation when the prior work was necessary to

secure the final result obtained in the subsequent case. In *Keenan v. City of Philadelphia*, 983 F.2d 459 (3d Cir. 1992), for example, the court considered an action under 42 U.S.C. § 1983 alleging, among other things, gender discrimination in the Philadelphia police department. After a jury found for plaintiffs, the district court awarded attorney's fees to plaintiffs including "hours spent on preparation, litigation, and appeal of a labor arbitration hearing concerning plaintiffs . . . that preceded [the litigation]." *Keenan*, 983 F.2d at 474. On appeal, the city of Philadelphia argued that such time should not be compensated because the arbitration was an optional, internal administrative proceeding. The Third Circuit rejected the argument, noting that work that is "useful and of a type ordinarily necessary to secure the final result obtained from the litigation" is properly compensable. *Id.* Because the arbitration testimony was used at trial and served the purposes of discovery in the subsequent case, the district court held that the time spent on the arbitration matter was "inextricably linked to the issues before the district court," and the Third Circuit affirmed the district court's reasoning. *Id.*

Similarly, in *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 419 (3d Cir. 1993), the Third Circuit reversed the district court's categorical denial of fees and expenses from a prior litigation. The Third Circuit noted Supreme Court precedent generally allowing attorneys' fees for time that is "'reasonably expended' to advance the litigation for which fees were sought." *Id.* at 420, quoting *Webb*, 471 U.S. at 234. It therefore concluded that "there is no blanket legal impediment to including time spent in another litigation in a fee award," and held that "if the plaintiff can prove that the fees and expenses incurred in the other litigation resulted in work product that was actually utilized in the instant litigation, that the time spent on other litigation was 'inextricably linked' to the

issues raised in the present litigation, and that plaintiff has not previously been compensated for those fees and expenses, then the district court may include those fees and expenses in its fee award." *Id.* at 419, 420.

The question before the Court is then, considering the related facts and intertwined procedural posture of the related cases, whether time spent in the related cases materially benefitted the Plaintiffs in this case. Given the significantly more advanced posture of the related cases (many through summary judgment and one through trial), the voluminous, overlapping and coordinated discovery record developed across all the related cases, and the favorable ruling from the Fourth Circuit, Plaintiffs' counsel's work in the related cases materially benefitted these plaintiffs and resulted in the global settlement through which this case was resolved.

### 3. Plaintiffs' counsel's lodestar and timekeeper information

Submitted along with this motion is the declaration of lead attorney George A. Hanson that includes a chart identifying hours expended and lodestar incurred in the related litigation. *See* Exhibit _____. Counsel's records reflected that a total of 61,868.4 hours were expended pursuing the claims of 342 plaintiffs in 32 related federal actions pending across the country.[8] At counsel's standard hourly rates, the total lodestar expended was $25,148,573.13. Dividing the total lodestar by total hours expended results in an aggregate blended rate of $406.48 per hour. Importantly, plaintiffs presented total

---

[8] These 342 plaintiffs, including all Plaintiffs in this action, were formerly party plaintiffs of collective actions pending in the Eastern District of Louisiana (*Lang, et al. v. DIRECTV*, Case No. 10-1085-NJB (E.D.La.)) and the Eastern District of Missouri (*Arnold, et al. v. DIRECTV*, Case No. 10-0352-JAR (E.D.Mo.)). After decertification of those representative actions, 342 of the former opt-ins chose to continue to pursue their claims on an individual basis. Hanson Dec. ¶ 4.

expenditure of lodestar and blended rate only as reference points; Plaintiffs' counsel do not seek their actual lodestar. In fact, the amount the parties have agreed for fees and costs to resolve all the related litigation is far less. After reimbursement of $1,593,318.45 advanced as litigation costs, under the global settlement Plaintiffs' counsel will receive a total of $6,871,681.55 in fees for the 32 related actions. Dividing $6,871,681.55 by total hours of 61,868.4 results in a blended rate of **$111.07 per hour** across all related cases. Hanson Dec. ¶ 16.

Exhibit 2 attached to George Hanson's Declaration identifies by name, position, years of experience, hours billed and hourly rate, all time keepers who devoted substantial hours to the related litigation, and also provides a description of the work and responsibilities performed by each attorney and staff member. Given that any recovery of fees was wholly contingent on a successful outcome, there was certainly no incentive for Plaintiffs' counsel to engage in unproductive time or duplicative tasks. To the contrary, the related litigation was staffed to maximize efficiency with each attorney and staff member performing work commensurate with his or her level of experience and skill. Hanson Dec. ¶¶ 28–29.   That said, as the Court will see from the summary chart, the outcome represented by this settlement required a truly prodigious amount of work from a large, dedicated team of attorneys and professional staff, each performing the necessary tasks vital to the ultimate resolution of this and the related cases. Hanson Dec. ¶¶ 28–29.

Plaintiffs' counsel are not asking the Court to approve their standard rates because, in order to facilitate compromise and a fair result of all plaintiffs, counsel has agreed to receive an aggregate discounted blended rate fee of $117.07 per hour across all the related cases. Nonetheless, were this to be a contested fee application or common fund fee request

rather than individual settlements, Plaintiffs' counsel respectfully submit that their standard rates are reasonable given, among other factors, the complexity of the work and the experience and reputation of counsel. In addition, the Fourth Circuit has held that it is appropriate for the district court to evaluate attorneys' fees in the context of a national market where, as here, the litigation is national in scope and there is not a true market for this type of litigation in the location where the district court resides. *See, e.g., Rum Creek Coal Sales, Inc v. Caperton*, 31 F.3d 169, 179 (4th Cir. 1994) (noting that "[r]ates charged by attorneys in other cities, however, may be considered" when the complex and specialized nature of the case are such that there is not a true market for that type of litigation where the district court sits and "the party choosing the attorney from elsewhere acted reasonably in making the choice.").

Although Plaintiffs' counsel does not seek to be compensated at their standard hourly rates in this settlement, as noted in the attached declaration—those rates have been routinely approved throughout the country—including in cases litigation similar claims against DIRECTV. Hanson Dec. ¶¶ 31–39. The disparity between the effective hourly rates actually recovered in this settlement and Plaintiffs' counsel's standard hourly rates further underscores the reasonableness of the fee request before the Court.

### 4. Fourth Circuit's twelve factors

A brief review of each of the Fourth Circuit's twelve factors further illustrates that the discounted fee ($111.07 per hour in aggregate) sought as part of this settlement is reasonable. *See Garcia*, 2015 U.S. Dist. LEXIS 17128, *12–13 (D. Md. Dec. 23, 2015) (reviewing 12-factors in finding $28,000 fee for single-plaintiff case reasonable).

**Factor 1:**      **Time and Labor Expended**

As discussed extensively above, in the more than eight years spent pursuing litigation on behalf of the 342 related plaintiffs, Plaintiffs' counsel has expended 61,868.4 total hours to bring these cases to closure (excluding the considerable time spent moving for settlement approval in the 32 related cases, working with the settlement administrator and communicating with clients about the settlement). This factor supports the settled fee. Hanson Dec. ¶ 46.

**Factor 2:**      **The Novelty and Difficulty of the Questions Raised**

These related cases involved myriad questions of novel and unsettled law under the FLSA, including: (i) whether plaintiffs were properly classified as "independent contractors" or, as a matter of economic reality, were "employees" as a matter of law, (ii) whether defendants' unique piece-rate compensation schemes were compliant with the FLSA and its governing regulations and paid plaintiffs for all hours worked, (iii) whether uncompensated hours worked under 40 in an overtime week are compensable under the FLSA and its governing regulations, (iv) whether the retail sales exemption under Section 7(i) precluded plaintiffs' claims as a matter of law, (v) whether an employer must have actual notice that a worker misclassified as an independent contractor was working overtime, and (vi) whether defendants' alleged violations of the FLSA were "willful" such that the FLSA's limitations period extended from two to three years. The fact that federal courts issued divergent rulings on essentially every one of these issues only underscores the challenge and difficulty of the questions raised in this litigation. This factor supports the settled fee. Hanson Dec. ¶ 47.

**Factor 3:    The Skill Required to Properly Perform the Legal Services Rendered**

Wage and hour law is by its nature complex, often technical, and requires years of experience to fully master the legal concepts. The skill required to prosecute these related cases was significantly magnified by the fact that defendants are sophisticated entities that articulated numerous good faith defenses premised on a technical reading of the FLSA and its governing regulations. This is in contrast to a garden variety wage and hour claim for unpaid overtime or minimum wage violations. Of course, simultaneously prosecuting hundreds of individual wage and hour claims across dozens of federal jurisdictions only compounds the challenge and requires not only technical skill but considerable organizational and management skill as well. This factor supports the settled fee. Hanson Dec. ¶ 48.

**Factor 4:    The Attorney's Opportunity Costs in Pressing the Instant Litigation**

Every one of the more than 60,000 hours Plaintiffs' counsel spent on this case and the related cases was an hour not spent working on or developing cases that may have presented a far higher return on investment. The cost of this lengthy litigation in the form of lost opportunities for alternative work is very real. Indeed, the principal lawyers responsible for this litigation were effectively precluded from undertaking other representation for many years due to the demands of these cases. This factor supports the settled fee. Hanson Dec. ¶ 49.

**Factor 5:    The Customary Fee for Like Work**

As described above, settlements involving the same fees as sought here have been recently approved by each of the other federal courts in the related actions. In addition,

Plaintiffs' counsel typically resolve their cases, whether by settlement or winning judgments, that result in fees many multiples higher than the effective hourly rate of the settled fees in this case. This factor supports the settled fee. Hanson Dec. ¶ 50.

**Factor 6:      The Attorney's Expectations at the Outset of the Litigation**

Plaintiffs' counsel typically initiates litigation of this nature with the expectation that a (hopefully favorable) resolution will be achievable in no more than 2–3 years and without an overwhelming expenditure of resources. These related cases belied those expectations, and required a much longer time horizon and far more significant investment of attorney resources and out of pocket expenses than was expected at the outset. Nonetheless, mindful of their obligation to their clients, counsel did everything necessary to bring these cases to a satisfactory resolution. This factor supports the settled fee. Hanson Dec. ¶ 51.

**Factor 7:      The Time Limitations Imposed by the Client or Circumstances**

It is self-evident that the simultaneous prosecution of multiple related cases over many years inevitably imposed significant limitations on Plaintiffs' counsel's available time. Without going into undue histrionics, suffice it to say Plaintiffs' counsel sacrificed much personal and family time in order to meet the demands of this litigation. This factor supports the settled fee. Hanson Dec. ¶ 52.

**Factor 8:      The Amount in Controversy and the Results Obtained**

As noted in Plaintiffs' original submission, each Plaintiff in this case will receive no less than $150 for each week worked during the FLSA's two-year limitations period, and no Plaintiff will receive less than a minimum payment of $3,500. The overall range of each Plaintiff's recovery in this case will be from $3,500 to $13,950. Given the factual

circumstances (as well as the significant risks), the settlement provides Plaintiffs with close to "make whole" relief. This factor supports the settled fee. *See* Hanson Dec. ¶ 53.

**Factor 9:       The Experience, Reputation and Ability of the Attorneys**

At the risk of self-aggrandizement, it is nonetheless fair to say that Plaintiffs' counsel are regarded as among the most experienced and skilled wage and hour attorneys in the country. A more fulsome recitation of counsel's experience, reputation and qualifications are contained within the supporting declarations. Plaintiffs' counsel respectfully submits that this factor supports the settled fee. Hanson Dec. ¶ 54 and Ex. 4, Declarations Compilation; Ex. 5 Werts Dec. ¶¶ 5–8.

**Factor 10:     The Undesirability of the Case within the Community**

For the reasons stated in the Fitzgerald Declaration, originally submitted in support of the motion to approve settlement in the Northern District of North Carolina—of course, also situated in the Fourth Circuit—it is unlikely that there are many (if any) local firms that would have viewed it as desirable to take on this litigation given its tremendous scope and demands. This factor supports the settled fee. Hanson Dec. ¶ 55; Fitzgerald Dec. ¶ 7.

**Factor 11:     The Nature and Length of the Professional Relationship between Attorney and Client**

The relationship between Plaintiffs' counsel and Plaintiffs began many years ago when Plaintiffs opted-in to one of the predecessor conditionally certified collective actions. The fact that Plaintiffs' counsel continued to be willing to represent these Plaintiffs after decertification and on an individual basis is a testament to both counsel's commitment to their clients and the strength of their attorney-client relationship. This factor supports the settled fee. Hanson Dec. ¶ 56.

28

**Factor 12:     Attorneys' Fees Awards in Similar Cases**

As noted above in Factor 5, settlements involving the same fees as sought here have been recently approved by every other federal court in the related actions. In addition, Plaintiffs' counsel typically resolve their cases, whether by settlement or winning judgments, that result in fees many multiples higher than the effective hourly rate of the settled fees in this case. This factor supports the settled fee. Hanson Dec. ¶ 57.

## IV.   CONCLUSION

For the reasons stated above, the Plaintiffs respectfully request that the Court issue an order approving the settlement agreements submitted contemporaneously with this motion and dismissing this action with prejudice. A proposed order for the Court's consideration is submitted with this unopposed motion.

Dated:  May 10, 2019                           Respectfully submitted,

                                               **STUEVE SIEGEL HANSON LLP**


                                        By:   /s/ George A. Hanson
                                              George A. Hanson, *Admitted Pro Hac Vice*
                                              MO Bar No. 43450
                                              460 Nichols Road, Suite 200
                                              Kansas City, Missouri 64112
                                              Telephone:    816-714-7100
                                              Facsimile:    816-714-7101
                                              Email:  hanson@stuevesiegel.com

                                              **WOODLEY AND MCGILLIVARY**
                                              Megan Kathleen Mechak
                                              Molly Ann Elkin
                                              1101 Vermont Avenue NW, Suite 1000
                                              Washington, DC 20005
                                              Telephone: 202-833-8855
                                              Facsimile: 202-452-1090
                                              Email: mkm@wmlaborlaw.com
                                                       mae@wmlaborlaw.com

                                              **LEAR WERTS LLP**
                                              Todd C. Werts, *Admitted Pro Hac Vice*
                                              2003 W. Broadway, Suite 107
                                              Columbia, Missouri 65203
                                              Telephone:    573-875-1991
                                              Facsimile:    573-875-1985
                                              Email: werts@learwerts.com
                                              *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2019, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


                                               /s/Goerge A. Hanson